UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PROGENICS PHARMACEUTICALS, INC., AND EXINI DIAGNOSTICS AB,<br><br>Plaintiffs,<br><br>v.<br><br>MIM SOFTWARE, INC.,<br><br>Defendant. | Case No.: 24-10437-PBS<br><br>Hon. Patti B. Saris<br><br>Leave to file excess pages granted on March 5, 2025[1] |

**DEFENDANT'S CLAIM CONSTRUCTION REPLY BRIEF**

---

[1] The Court's Scheduling Order permits each party 40 total pages for claim construction briefing spread across an opening and reply brief. Dkt. 85 at 2.

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1
II. DISPUTED CLAIM TERMS ......................................................................................... 1
    A. "FIT[TING] … A MULTI-COMPONENT MIXTURE MODEL TO A DISTRIBUTION OF INTENSITIES OF VOXELS WITHIN THE REFERENCE VOLUME" ............................................................................. 1
    B. "A MAJOR MODE OF THE MULTI-COMPONENT MODEL" ............................... 3
    C. "ONE OR MORE UPTAKE METRICS INDICATIVE OF RADIOPHARMACEUTICAL UPTAKE THEREIN" ................................................ 5
    D. "FIRST MODULE" AND "SECOND MODULE" ....................................................... 6
    E. "A DILATED BLADDER VOLUME" ........................................................................ 8
    F. "CORRECT[ING] FOR CROSS-TALK FROM THE BLADDER" ........................... 9
III. CONCLUSION .............................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
    246 F.3d 1368 (Fed. Cir. 2001)..................................................................................5, 10

*Dyfan, LLC v. Target Corp.*,
    28 F.4th 1360 (Fed. Cir. 2022) .........................................................................................7

*Egenera, Inc. v. Cisco Sys.*,
    972 F.3d 1367 (Fed. Cir. 2020).........................................................................................7

*In re Fought*,
    941 F.3d 1175 (Fed. Cir. 2019).........................................................................................5

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc)...............................................................1, 2, 8

*Proveris Sci. Corp. v. Innovasystems, Inc.*,
    739 F.3d 1367 (Fed. Cir. 2014).........................................................................................5

*Retractable Techs., Inc. v. Becton*,
    653 F.3d 1296 (Fed. Cir. 2011).........................................................................................2

*Shure, Inc. v. ClearOne, Inc.*,
    2019 U.S. Dist. LEXIS 144085 (N.D. Ill. Aug. 25, 2019)..........................................1

*Sulzer Textil A.G. v. Picanol N.V.*,
    358 F.3d 1356 (Fed. Cir. 2004).........................................................................................1

*United States Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997).........................................................................................1

*Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*,
    614 Fed. Appx. 503 (Fed. Cir. 2015)................................................................................3

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015)......................................................................................6, 7

*Zeroclick, LLC v. Apple Inc.*,
    891 F.3d 1003 (Fed. Cir. 2018).........................................................................................7

**Statutes**

35 U.S.C. § 112(f).................................................................................................................6, 7

**Other Authorities**

MPEP § 2181.I.............................................................................................................................6

I.  **INTRODUCTION**

In their Reply, Plaintiffs continue to: (i) misinterpret the intrinsic evidence; (ii) misapply applicable claim construction standards; and (iii) avoid offering meaningful constructions that would assist the trier of fact or resolve the parties' disputes regarding claim scope. Instead, Plaintiffs double down on their unsupported contention that "[t]he disputed claims … are drafted in clear, technical language that a POSA would readily understand." Pl. Rep. Br., 5 (emphasis added). Because MIM's constructions are supported by the intrinsic evidence, conform with claim construction principles, and will be helpful to the factfinder, the Court should adopt MIM's proposed constructions for the disputed claim terms.

II.  **DISPUTED CLAIM TERMS**

A.  **"fit[ting] … a multi-component mixture model to a distribution of intensities of voxels within the reference volume"**

The purpose of claim construction is to aid the factfinder. *See United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997); *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004).[2] Construction is appropriate when the parties present a genuine dispute and interpreting the claim terms involves more than applying "the widely accepted meaning[s] of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).

This term needs construction at least because MIM denies "fit[ting]" a "model" to a "distribution"—the meaning of which is not readily apparent to a layperson. Whereas MIM offers

---

[2] Plaintiffs' reliance on purportedly opposing caselaw misses the mark. In *Shure, Inc. v. ClearOne, Inc.*, the accused infringer opposed a proposed construction, not because it was necessarily wrong, but because no relevant data would exist to prove noninfringement under such construction. 2019 U.S. Dist. LEXIS 144085, at *11 (N.D. Ill. Aug. 25, 2019). The court rejected this argument, merely reaffirming the separation between claim construction and infringement analyses. *See id.*

1

an understandable construction that is relevant to the parties' dispute, Plaintiffs' alternate construction sidesteps the issues entirely. Plaintiffs tout—as if it was a good thing—that "Plaintiffs' construction, in contrast, uses terms *as they appear in the claim itself* … ." Pl. Rep. Br., 7 (emphasis added). That is not helpful. If anything, Plaintiffs' construction creates new issues by introducing, without explanation, the concepts of "overall distribution" and "observed distribution." *Id.* Thus, Plaintiffs' construction simply does nothing to clarify this claim term.

Although Plaintiffs' *arguments* introduce additional definitions, those definitions are conspicuously absent from Plaintiffs' proposed construction. For example:

| Term | Meaning | Citation |
| --- | --- | --- |
| "fitting" | "calculating the statistical parameters of" | Pl. Op. Br., 11. Pl. Rep. Br., 6. |
| "statistical parameters" | "means, variances, and weights" | Pl. Rep. Br., 6. |
| "fitting a multi-component mixture model" | "a mathematical calculation" | Pl. Op. Br., 10-11. Pl. Rep. Br., 6. |

MIM's construction is helpful and "tethers the claims to what the specification[] indicate[s] the inventor actually invented." *Retractable Techs., Inc. v. Becton*, 653 F.3d 1296, 1305 (Fed. Cir. 2011). Not only is MIM's construction consistent with the plain and ordinary meaning, it is also supported by both the prosecution history and the specification, which is "the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315, 1317.

MIM's construction, unlike Plaintiffs', addresses what it means to "fit" a "model" to a "distribution" in the context of this invention. The plain and ordinary meaning of "fit" or "fitting" is "to make or adjust to the right shape and size." Ex. I at 2-3. The specification demonstrates, by way of a histogram analysis, that the "model" is represented by a set of curves that approximate the "distribution" of data points. *See* Ex. D, FIG. 2A. A mere collection of data points is not a distribution until it has been plotted. Thus, determining a set of curves that approximately fit a plot of the data is "fitting" a "model" to a "distribution," as claimed.

2

MIM's construction does not import limitations from the specification; it explains the claim terms "fit[ting]" and "model" which need construction. Nor does MIM's construction "require actual drawing" or "the visual display of a diagram," as Plaintiffs contend. Pl. Rep. Br., 5-7. MIM's construction specifies one act: "determining a plurality of curves." Pl. Op. Br., 10. The "curves" are defined as those "approximately fit[ting] a plot of a distribution of intensities of voxels within the reference volume." *Id.* In other words, the curves must be of the "right shape and size." *See* Ex. I at 2-3. Whether the curves are ever drawn or displayed is irrelevant. MIM's construction never requires an act of drawing or of displaying a model.

Therefore, the Court should adopt MIM's proposed construction, which is based on the intrinsic record and the only offered construction that would be helpful to the factfinder.

### B. "a major mode of the multi-component model"

In claim construction, "attorney arguments are not relevant intrinsic or extrinsic evidence." *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 614 Fed. Appx. 503, 511 (Fed. Cir. 2015). Yet Plaintiffs' construction rests entirely on several conclusory statements that are devoid of factual support, including:

- "[A]s would be understood by one of ordinary skill in the art, 'major mode' refers to the most prevalent component of the mixture model[.]" Pl. Rep. Br., 8.
- "The claims and specification define the 'major' mode by prevalence (weight)." *Id.*
- "Identifying that baseline requires measuring which tissue type is most prevalent in an image (often the regular healthy tissue)[.]" *Id.* at 9.

These statements are merely unsupported attorney argument, and the Court should ignore them.

Plaintiffs appear to misunderstand the difference between the statistical "mode" of a distribution in comparison to the "mean" and "median" of the distribution. While the mean is the

3

average and the median is the middle value (when the data is placed in order), the mode is the most frequent value (i.e., the peak when plotted on a histogram). The difference is visually apparent when comparing different data types, such as the following generalized examples:



Under MIM's construction, the "major mode" is the curve (of the plurality of curves making up the multi-component model) that has a statistical mode (i.e., the vertical peak) farthest to the right (i.e., the largest value on the x-axis, which measures intensity value). By contrast, "minor modes" are the curves having peaks to the left of the "major mode" (i.e., peaks located at a lower SUV intensity value).

Plaintiffs contend that the following passage in the patent contradicts MIM's construction: "In certain embodiments, if the minor component has a larger <u>mean</u> SUV than the major component … no reference value for the liver is determined." Ex. D, 30:19-23. Plaintiff is wrong because the passage is referring to the "mean SUV," not the mode or peak of the respective components. Depending on the shape of the distribution and the component curves that fit the distribution, the *mean* SUV of the "major mode" could be less than (i.e., to the left of) the *mean* SUV of the minor mode even though the peak of the major mode is to the right of the minor mode.

Accordingly, the Court should adopt MIM's construction.

### C. "one or more uptake metrics indicative of radiopharmaceutical uptake therein"

The Federal Circuit has "repeatedly held that a preamble is limiting when it serves as antecedent basis for a term appearing in the body of the claim." *In re Fought*, 941 F.3d 1175, 1178 (Fed. Cir. 2019).³  This is especially the case when the term is "defined in greater detail in the preamble" than the body. *Proveris Sci. Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1373 (Fed. Cir. 2014) ("[T]he inventors clearly relied on both the preamble and the body of claim 3 to define the claimed invention.  Accordingly, the preamble of claim 3 should be construed as importing a limitation into the claim.").  Here, the preambles introduce and define "one or more uptake metrics" and provide antecedent basis for "the one or more uptake metrics," as used subsequently in the bodies. *E.g.* Ex. E, 74:4-5, 74:42-43.  Therefore, the preambles are limiting and should be construed.

The proper construction of this term hinges on the word "therein."  "Radiopharmaceutical uptake," as recited in the claim, occurs in some location; MIM asks the Court to clarify where. The plain language of the preamble defines the relevant location where radiopharmaceutical uptake occurs: "a prostate of a subject." *E.g. id.*, 74:2-7.  This is confirmed by the rest of the claim, which states (in claim 1): "determining, by the processor, the one or more uptake metrics using the 3D functional image and the prostate volume identified … [.]" *Id.*, 74:33-35 (emphasis added).

Therefore, the Court should adopt MIM's proposed construction.

---

³ Plaintiffs' reliance on *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.* is misplaced.  246 F.3d 1368 (Fed. Cir. 2001).  The Federal Circuit did not refuse to construe the preamble "even though similar language appeared in the claim body." Pl. Rep. Br., 12.  There, the court acknowledged that the disputed phrase, "an antineoplastically effective amount," "essentially duplicate[d] the dosage amounts recited in the claims[.]" *Id.* at 1375.  Here, the language in the body is not just "similar" to the preamble—it is the same.  And the preamble limits "one or more uptake metrics" to those "indicative of radiopharmaceutical uptake therein."

5

### D.     "first module" and "second module"

These "modules" are means-plus-function claim terms under 35 U.S.C. § 112(f). Plaintiffs' arguments to the contrary misunderstand, or at least misapply, the proper analysis.

The Court must make two determinations. <u>First</u>, in the absence of "means for" language, Section 112(f) applies if "the claim term lacks sufficiently definite structure" or recites "function without reciting sufficient structure for performing that function." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015) (en banc in relevant part) (internal citations omitted). This test is satisfied where a generic placeholder for "means" (a "nonce word") is modified by functional language and not modified by sufficient structure for performing the claimed function. *See* MPEP § 2181.I. <u>Second</u>, if Section 112(f) applies, the claim term is "construed to cover the corresponding structure … described in the specification and equivalents thereof." § 112(f). Plaintiffs make at least four errors in applying this framework.

First, Plaintiffs declare that "module" is "definitively not [a] nonce word[.]" Pl. Rep. Br., 13. But it is: "'Module' is a well-known nonce word that can operate as a substitute for 'means' in the context of § 112[f]." *Williamson*, 792 F.3d at 1349.

Second, Plaintiffs mistake function for structure, stating that the "module" terms are "not nonce words as the <u>functions</u> are recited in the claim itself." Pl. Rep. Br., 13 (emphasis added). It is <u>structure</u>, not function, however, that must be recited to avoid Section 112(f). Plaintiffs also argue that the claims avoid Section 112(f) because they "define each module's role, inputs, and outputs within a technical pipeline." Pl. Rep. Br., 13. According to the Federal Circuit, however, this is <u>textbook</u> "black box" functional claiming:

> Egenera next argues that the claim language defines the inputs, outputs, connections, and operation of the logic compartment. … But the cases Egenera cites do not compel its favored outcome and do not endorse black-box claiming. … [H]ere the claims and specification **provide no structural limitation to the inputs, outputs, connections, and operation** of the claimed [term].

6

*Egenera, Inc. v. Cisco Sys.*, 972 F.3d 1367, 1374 (Fed. Cir. 2020) (emphasis added) (internal quotations omitted).  Here, the claims are drafted "in a format consistent with traditional means-plus-function claim limitations," as they "replace[] the term 'means' with the term 'module' and recite[ the] functions performed" by the module.  *Id.*

Third, Plaintiffs mischaracterize the precedent.  Software terms do not avoid Section 112(f) whenever "the claims and specification describe how the component <u>operates</u> within a defined system."  *See* Pl. Rep. Br., 14 (emphasis added).  Such a rule would eviscerate functional claiming for computer-enabled inventions.  *Zeroclick, LLC v. Apple Inc.* held that "program" and "user interface code" are not nonce words.  891 F.3d 1003, 1008 (Fed. Cir. 2018).  But *Zeroclick* acknowledged that "module" <u>is</u> a nonce word.  *Id.* at 1009 (citing *Williamson*, 792 F.3d at 1350-51).  Similarly, in *Dyfan, LLC v. Target Corp.*, the Federal Circuit held that Section 112(f) did not apply to the terms "code" and "application" where unrebutted expert testimony established that these terms were not nonce words.  28 F.4th 1360, 1367-68 (Fed. Cir. 2022).  The terms "first module" and "second module," by contrast, are merely black boxes that do not connote sufficiently definite structure for performing the recited functions.  Nor do Plaintiffs provide expert testimony to the contrary.

Fourth and finally, Plaintiffs mistake "corresponding structure" in the specification for "sufficiently definite structure" in the claim.  Plaintiffs cite to "at least 8 different figures and 20 illustrative embodiments of 'module'" in the specification.  Pl. Rep. Br. 14; *see also id.* at 13-14 (quoting the specification's discussion of a CNN module).  This hodgepodge of "corresponding structure … described in the specification" indicates functional claiming, not a special definition of the nonce word "module" as it appears in the claims.  Moreover, this corresponding structure is consistent with MIM's proposed constructions: "a first convolutional network as depicted in Figs.

7

7A-E" (first module) and "a second convolutional neural network as depicted in Figs. 7F-J" (second module). Pl. Op. Br., 19.

Accordingly, the Court should rule that these terms are means-plus-function terms and adopt MIM's proposed constructions.

### E.   "a dilated bladder volume"

Plaintiffs' proposed construction is divorced from the invention and does not capture the intended function expressly defined in the specification. As such, the Court should adopt MIM's proposed construction, which is consistent with the intrinsic record.

Plaintiffs insist that "the intrinsic record confirms" their plain meaning approach. Pl. Rep. Br., 16. Plaintiffs' intrinsic support consists of two lines in the specification which merely repeat the claim language. *See id.*; *compare* Ex. E, 39:66-67 (describing that "an identified bladder volume is dilated (e.g., via morphological dilation)") *with id.*, 75:38-39 (claiming "determining … a dilated bladder volume by applying a morphological dilation operation … ."). Neither passage explains what "morphological dilation" means.

Plaintiffs thereafter rely exclusively on extrinsic evidence. *See* Pl. Rep. Br., 16-17. In claim construction, extrinsic evidence is less reliable than intrinsic evidence precisely because "each party will naturally choose the pieces of extrinsic evidence most favorable to its cause" out of a "virtually unbounded universe" of options. *Phillips*, 415 F.3d at 1318. Plaintiffs engage in such cherry-picking here. To support their "plain meaning" approach, Plaintiffs cite not to technical dictionaries or treatises, but to help center and support documentation for software programs. *Cf. id.* ("Within the class of extrinsic evidence, the court has observed that <u>dictionaries and treatises</u> can be useful in claim construction.") (emphasis added); *see* Pl. Rep. Br., 16-17.

By contrast, MIM's construction conforms with the specification and the purpose of the invention. The specification teaches that those voxels "within a predefined distance from the

8

identified bladder volume" are omitted. *See* Ex. E, 10:22-27. Contrary to Plaintiffs' assertion, this feature of the dilation operation is not fulfilled by merely expanding the bladder volume in any direction by any undefined amount. Expanding the bladder volume by a "predefined distance" requires preserving the shape of the bladder.

### F. "correct[ing] for cross-talk from the bladder"

In effect, Plaintiffs would have the claim read "correct[ing] for cross-talk <u>within</u> the bladder" rather than "correct[ing] for cross-talk <u>from</u> the bladder." That is not correct.

Plaintiffs contend that the surrounding claim language, "<u>using</u> intensities of voxels … corresponding to the identified <u>bladder</u> volume," supports their construction and is "dispositive." *See* Pl. Rep. Br., 19. But as MIM already explained, "using" intensities corresponding to the bladder to, for example, determine a bleed function does not also mean "adjusting" the intensities in the bladder as Plaintiffs' construction requires.

The plain meaning of the disputed claim language is confirmed by the surrounding claim language and the specification. Every claim of the patent that contains this claim term is directed to a method or system for identifying 3D volumes "that correspond to a prostate of a subject" and "determining one or more uptake metrics … therein" (i.e., in the prostate). *See* Ex. E, 74:2-6, 75:9, 79:13-17, 84:22-26. Correcting for cross-talk (i.e., intensity bleed/interference) from the bladder is a function performed to improve the determination of uptake metrics in the prostate. This is made explicit in the specification, which describes "correcting for cross-talk from the bladder … by adjusting intensities of voxels of the 3D functional image <u>that correspond to the prostate volume</u> based on their proximity to the identified bladder volume[.]" *Id.*, 9:36-40 (emphasis added). Even the section of the specification that Plaintiffs rely on supports MIM's construction by stating that "bladder suppression … is used to remove intensity bleed from the bladder to other regions" and "[a]n amount of suppression, that is, intensity bleed to remove from a particular voxel … is

9

dependent on <u>a distance from that voxel to a core bladder region</u> … ."  *Id.*, 40:6-12 (emphasis added).

MIM's construction does not violate the doctrine of claim differentiation.[4]  With reference to claims 7 and 8, MIM's construction of the disputed term in claim 7 does not read in a limitation from claim 8 that would render claim 8 "superfluous" as Plaintiffs contend.  *See* Pl. Rep. Br., 21.  Plainly, claim 8 introduces "one or more bladder intensity bleed functions" and adds two new process steps to step (e) of claim 7: (1) "determining" the bleed functions, and (2) "using" the bleed functions to adjust an intensity of the prostate volume voxels.  Ex. E, 75:17-33.  Clearly, then, while claim 8 is consistent with MIM's construction of claim 7, MIM's construction of claim 7 does not render claim 8 meaningless.

Accordingly, the Court should adopt MIM's proposed construction.

## III.   CONCLUSION

For these reasons, the Court should adopt MIM's proposed claim constructions and reject Plaintiffs' requests to not construe the claims as well as Plaintiffs' alternative constructions.

---

[4] Moreover, the doctrine of claim differentiation "only creates a presumption that each claim in a patent has a different scope; it is not a 'hard and fast' rule of construction." *Bristol-Myers Squibb*, 246 F.3d at 1376.

Dated: September 19, 2025

Respectfully submitted,

*/s/ Marla R. Butler*

| | |
|---|---|
| Marla R. Butler (*pro hac vice*) | Lisa J. Pirozzolo (BBO #561922) |
| THOMPSON HINE LLP | WILMER CUTLER PICKERING |
| Two Alliance Center | HALE AND DORR LLP |
| 3560 Lenox Road, NE., Suite 1600 | 60 State Street |
| Atlanta, GA 30326-4266 | Boston, MA 02109 |
| Telephone: (404) 407-3680 | Telephone: (617) 526-6000 |
| Facsimile: (404) 541-2905 | Facsimile: (617) 526-5000 |
| Marla.Butler@ThompsonHine.com | Lisa.Pirozzolo@wilmerhale.com |
| | |
| Jeffrey C. Metzcar (*pro hac vice*) | Alexis Cohen (*pro hac vice*) |
| THOMPSON HINE LLP | Laura E. Powell (*pro hac vice*) |
| Discovery Place | Gilbert T. Smolenski (*pro hac vice*) |
| 10060 Innovation Drive, Suite 400 | WILMER CUTLER PICKERING |
| Dayton, OH 45342-4934 | HALE AND DORR LLP |
| Telephone: (937) 443-6841 | 2100 Pennsylvania Avenue NW |
| Facsimile: (937) 443-6635 | Washington, D.C. 20037 |
| Jeff.Metzcar@ThompsonHine.com | Telephone: (202) 663-6000 |
| | Facsimile: (202) 663-6363 |
| Jesse L. Jenike-Godshalk (*pro hac vice*) | Alexis.Cohen@wilmerhale.com |
| THOMPSON HINE LLP | Laura.Powell@wilmerhale.com |
| 312 Walnut Street, Suite 2000 | Gilbert.Smolenski@wilmerhale.com |
| Cincinnati, OH 45202-4024 | |
| Telephone: (513) 352-6700 | |
| Facsimile: (513) 241-4771 | |
| Jesse.Godshalk@ThompsonHine.com | |
| | *Attorneys for Defendant MIM Software, Inc.* |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2025 a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. A true and correct copy of the foregoing documents was served this day on all counsel of record via electronic transmission by the Court's CM/ECF system.

/s/ Jesse Jenike-Godshalk